IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

ELIJAH TURLEY,
                Plaintiff,

vs.

ISG LACKAWANNA INC.,
ISG LACKAWANNA, LLC,
MITTAL STEEL USA LACKAWANNA INC.,
MITTAL STEEL USA INC.,
d/b/a/ ARCELOR-MITTAL STEEL
LARRY D. SAMPSELL,
GERALD C. MARCHAND,
THOMAS JAWORSKI

                Defendants

**COMPLAINT AND DEMAND FOR JURY TRIAL**

CIVIL NO.:

---

1. Plaintiff brings this action under the Civil Rights Act of 1866, 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), et seq., as amended by the Civil Rights Act of 1991, ("Title VII") and New York Human Rights Law, ("NYHRL"), 15 N.Y. Exec. Law §296 et seq. for damages arising from discrimination based on race and the discriminatory terms and conditions of employment imposed by the above captioned Defendants.

## JURISDICTION

2. This Court has jurisdiction pursuant to 42 U.S.C. §1981, Title VII, and this Court's power to assert ancillary and pendant jurisdiction of state law claims based on NYHRL, and pursuant to the common law of New York State.

## VENUE

3. Venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391 because Plaintiff resides within this district, Plaintiff's claims arise within this district and Defendants' conduct a substantial and significant amount of business within this district.

## PARTIES

4. Defendant ISG LACKAWANNA INC ("ISG INC") was or is a Delaware corporation with its principal place of business located at 3175 Lakeshore Road, Blasdell, New York.

5. ISG INC was or is an "employer" within the meaning of 42 U.S.C. §1981, 42 U.S.C. §2000e (b) and N.Y.S. Executive Law §292 and employs over 500 persons.

6. Defendant ISG LACKAWANNA LLC ("ISG LLC") was or is a Delaware corporation with its principal place of business located at 3175 Lakeshore Road, Blasdell, New York.

7. ISG LLC was or is an "employer" within the meaning of 42 U.S.C. §1981, 42 U.S.C. §2000e (b) and NYS Executive Law §292 and employs over 500 persons.

8. MITTAL STEEL USA LACKAWANNA INC., ("MITTAL-LACKAWANNA") was or is a Delaware corporation with its principal place of business located at 1 South Dearborn, Chicago, IL.

9. MITTAL-LACKAWANNA was or is an "employer" within the meaning of 42 U.S.C. §1981, 42 U.S.C. §2000e (b) and NYS Executive Law §292 and employs over 500 persons.

10. Defendant MITTAL STEEL USA INC. ("MITTAL STEEL USA") d/b/a/ ARCELOR-MITTAL STEEL was or is a Delaware corporation with its principal place of business located at 1 South Dearborn, Chicago, IL.

11. MITTAL STEEL USA (d/b/a ARCELOR-MITTAL STEEL), was or is an "employer" within the meaning of 42 U.S.C. §1981, 42 U.S.C. §2000e(b) and NYS Executive Law §292 and employs over 500 persons.

12. ISG INC., ISG LLC, MITTAL-LACKAWANNA, MITTAL STEEL USA and MITTAL STEEL USA d/b/a ARCELOR-MITTAL STEEL hereinafter will be collectively referred to as ("the Company").

13. At all relevant times, herein mentioned, Defendant Larry D. Sampsell ("Sampsell")

was and/or is an employee of the Company and the General Manager, Manager of Labor Relations and Manager of Security for the Company's Lackawanna, New York steel mill (the "Lackawanna steel mill").

14. At all relevant times, herein mentioned, Defendant Sampsell was and/or is Plaintiff's Manager and/or Supervisor.

15. At all relevant times, herein mentioned, Defendant Thomas Jaworski ("Jaworski") was and/or is an employee of the Company and Plaintiff's Manager and/or Supervisor.

16. At all relevant times, herein mentioned, Defendant Gerald C. Marchand ("Marchand") was and/or is an employee of the Company, Manager of Human Relations for the Company's Lackawanna steel mill and Plaintiff's manager and/or supervisor.

17. At all relevant times, herein mentioned, Plaintiff Elijah Turley (the "Plaintiff") is an African American male who is a United States citizen and a resident of the State of New York, who has been injured by the acts and practices described herein.

18. Plaintiff was and/or is an "employee" of the Company as defined by 42 U.S.C. §1981, Title VII, 42 U.S.C. §2000(e) and N.Y.S. Executive Law §292.

19. On December 15, 2005, Plaintiff dually filed a Charge of Discrimination with the New York State Division of Human Rights ("NYSDHR") and the Equal Opportunity Employment Commission ("EEOC"). On March 16, 2006 Plaintiff filed an amendment to the 2005 Charge. (collectively the "2005 Charge of Discrimination").

20. On March 16, 2006, Plaintiff dually filed a second Charge of Discrimination with the NYSDHR and the EEOC claiming continued acts of discrimination and retaliation. On June 5, 2006 Plaintiff filed an amendment to the 2006 Charge. (collectively the "2006 Charge of discrimination").

21. On December 1, 2006 the EEOC issued a Notice of Right to Sue.

22. Plaintiff has exhausted his administrative remedies and filed this Complaint within 90 days of the Notice of Right to Sue.

## FACTUAL ALLEGATIONS

23. Plaintiff realleges and incorporates by reference, Paragraphs 1-22, above.

24. Plaintiff was originally hired by the former Bethlehem Steel Corporation on January 3, 1995 and has worked at the Lackawanna steel mill continuously since that time. He has worked as a processor/operator in the Pickler department since 1996.

25. At all relevant times herein mentioned, Plaintiff has been employed by the Company as a processor/operator in the Pickler department of the Company's Lackawanna steel mill since May 2003 when it was acquired from Bethlehem Steel Corporation.

26. Plaintiff is currently one of only two African-Americans in the Pickler department of the Company's Lackawanna steel mill.

27. Plaintiff has been discriminated against by Defendants by being compensated at a lower rate of pay than Caucasian employees when performing the same job as the Plaintiff.

28. Plaintiff has been discriminated against by Defendants by denying him training and/or promotion to higher paying positions within the Company based on his race in favor of Caucasian employees.

29. Plaintiff has continually been denied overtime opportunities by Defendants in favor of Caucasian employees when referring to African-Americans in particular, the Plaintiff.

30. Racially offensive terms like "n--ger" and "boy" are commonly used and permitted to be used throughout the Company's Lackawanna steel mill.

31. On December 31, 2005, shortly after Plaintiff filed his 2005 Charge of Discrimination, Frank Pelc, ("Pelc") a Caucasian employee of the Company placed a sign on the door of Plaintiff's exclusive work booth that said "Dancing Gorilla".

32. Plaintiff complained to Jaworski, about the racist sign, but no investigation or disciplinary action was taken by the Company.

33. On January 2, 2006, Pelc again spray painted racially offensive graffiti on and around Plaintiff's work booth that included the following racial slurs directed at the Plaintiff: "King Kong", "King Kong Lives" and "KK".

34. Plaintiff complained about the racist graffiti to Sampsell, Jaworski, Marchand, and Chris Richards, the Plant Superintendent. After receiving no response from management, Plaintiff called the Company Security department which filled out an incident report and took pictures of the graffiti. When Plaintiff inquired about the investigation, Sampsell, claimed the file and the photographs had been stolen from his office.

35. Despite Pelc's admission that he was responsible for the December 31, 2005 and January 2, 2006 racist graffiti, the Company failed to undertake any further investigation and/or corrective action and the offensive material remains on the door to Plaintiff's work booth.

36. On February 9, 2006, Pelc threatened Plaintiff's life and screamed racially offensive epithets at him during work. The offensive comments included: "You Black M-F" and "You Black B-tch". Again the Company failed to investigate and/or take corrective action.

37. In March 2006, another Caucasian employee of the Company scrawled racially offensive graffiti on the walls of the Pickler department, including for example: "No Lazy People", directed at African American employees, in particular the Plaintiff. The racial slurs were permitted by Defendants to remain in the Pickler department in full view until at least June 2006.

38. Plaintiff's vehicle has been repeatedly vandalized in the Company's parking lot as part of the continuing harassment and retaliation for his complaints about discrimination.

39. Plaintiff has repeatedly filed and/or attempted to file complaints relating to the vandalism and damages to his vehicle with the Company's Security department, but no investigation

and/or corrective action was taken by the Company.

40. Although for the past ten years, Plaintiff has always reported directly to the "slitter operator", on May 11, 2006, Plaintiff was notified by Jaworski and Marchand that he was to report directly to Pelc, "a recoiler operator", and the employee responsible for the racially offensive graffiti, racial epithets and physical threats on Plaintiff's life.

41. On May 20, 2006, the chair in Plaintiff's work booth was covered with thick black grease. Plaintiff called his shift manager, Jim Mathis ("Mathis") to complain. Without any investigation, Mathis accused Plaintiff of vandalizing his own chair. Plaintiff called Company Security to further complain about the incident and the security guard who responded to the incident was terminated.

42. On July 25, 2006, The letters "KKK" were written on the wall across from Plaintiff's work booth. Plaintiff called Marchand and Sampsell who failed to respond. Plaintiff then called Mathis who viewed the graffiti and told Plaintiff that "Someone is just playing games again". No further investigation and/or corrective action was taken by the Company.

43. Since filing his Charges of Discrimination, Plaintiff has been continually harassed, discriminated, intimidated and retaliated against by the Defendants by among other things, excessively monitoring, scrutinizing and/or altering Plaintiff's gate arrival and departure times, time sheets and personnel records in an effort to subject him to unwarranted disciplinary action and/or termination.

44. Since filing his Charges of Discrimination, Plaintiff has been continually harassed, discriminated, intimidated and retaliated against by the Defendants by among other things, excessively monitoring, scrutinizing and/or otherwise interfering with Plaintiff's work performance in an effort to subject him to unwarranted disciplinary action and/or termination.

45. Since filing his Charges of Discrimination, Plaintiff has been continually harassed,

discriminated, intimidated and retaliated against by the Defendants by among other things, denying him personal and/or medically approved leave, which is not denied to similarly situated Caucasian employees.

46. Since filing his Charges of Discrimination, Plaintiff has been continually harassed, discriminated, intimidated and retaliated against by the Defendants by denying him bathroom breaks when requested and then disciplining and/or threatening him for leaving his post when similarly situated Caucasian employees are routinely granted bathroom breaks when requested and are not disciplined or threatened.

47. Since filing his Charges of Discrimination, Plaintiff has been continually harassed, discriminated, intimidated and retaliated against by the Defendants by among other things, hiring private investigators to monitor, scrutinize and follow him to and/or from work and while he was not working or on Company property.

48. Since filing his Charges of Discrimination, Plaintiff has been continually harassed, discriminated, intimidated and retaliated against by the Defendants by among other things, secretly recording, photographing, video taping and/or otherwise monitoring Plaintiff while at work and on Company property in an effort to intimidate him and subject him to unwarranted disciplinary action and/or termination.

49. Since filing his Charges of Discrimination, Plaintiff has been continually harassed, discriminated, intimidated and retaliated against by the Defendants by among other things, prohibiting Plaintiff from having and/or using a cell phone while on Company property and has further forced Plaintiff to make all telephone calls personal or otherwise from a Company telephone on a monitored & recorded telephone line when the same policy is not enforced for Caucasian employees.

50. Since filing his Charges of Discrimination, Plaintiff has been continually harassed,

discriminated, intimidated and retaliated against by the Defendants by among other things, threatening to fire him as a direct result of his complaints of discrimination.

For example:

A. In October 2006, Jaworski threatened Plaintiff that if he did not communicate with his Causcasian co-workers, Plaintiff would be terminated;

B. On November 28, 2006, after Plaintiff testified at a Worker's Compensation hearing for emotional distress related to Defendants' discriminatory conduct and hostile work environment, David Pyanowski, a Caucasian employee of the Company, unprovoked by Plaintiff, confronted Plaintiff in a loud and intimidating voice and yelled, you f–ing cry baby b-tch and "Tell your lawyers to s–ck this!"(while pointing to his genitals). Plaintiff complained to Sampsell who threatened to fire Plaintiff on the spot if he was involved in any further confrontations.

51. Since filing his Charges of Discrimination, Plaintiff has been continually harassed, discriminated, intimidated and retaliated against by the Defendants by among other things, threatening to terminate any Company employee who assists, cooperates with, supports or otherwise corroborates Plaintiff's complaints of discrimination.

52. Defendants have a history, pattern and practice of engaging in race based discrimination.

53. Defendants have engaged in and continue to encourage and foster a policy and practice of race based discrimination.

54. Defendants have engaged in and continue to encourage and foster a policy and practice of failing to investigate or taking seriously complaints of race based discrimination.

### COUNT I
### 42 U.S.C. §1981

55. Plaintiff realleges and incorporates by reference paragraphs 1-54 above.

56. Defendants have discriminated against Plaintiff by denying him the same rights as enjoyed by Caucasian employees with regard to the making, performance and/or modification of his

employment relationship with Defendants and with regard to the enjoyment of all benefits, privileges, terms and conditions of that relationship in violation of the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981.

57. Defendants' conduct has been intentional, deliberate, willful and conducted in callous disregard of the rights of Plaintiff under the law.

58. By virtue of Defendants' conduct as alleged herein, Plaintiff has been injured.

## COUNT II
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. §2000(e) et seq.

59. Plaintiff realleges and incorporates by reference, paragraphs 1-58 above.

60. Defendants have discriminated against Plaintiff with respect to the terms and conditions of employment because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991.

61. Defendants' conduct has been intentional, deliberate, willful and conducted in callous disregard of the rights of Plaintiff under the law.

62. By virtue of Defendants' conduct as alleged herein, Plaintiff has been injured.

## COUNT III
## NEW YORK HUMAN RIGHTS LAW
## 15 NEW YORK EXECUTIVE LAW §291 ET SEQ.

63. Plaintiff realleges and incorporates by reference paragraphs 1-62 above.

64. Defendants have discriminated against Plaintiff by denying him the same rights as enjoyed by Caucasian employees with regard to the terms and conditions of his employment in violation of 15 New York Executive Law §291 et seq.

65. Defendants' conduct has been intentional, deliberate, willful and conducted in callous disregard of the rights of Plaintiff under the law.

66. By virtue of Defendants' conduct as alleged herein, Plaintiff has been injured.

## COUNT IV
## NEW YORK HUMAN RIGHTS LAW
## AIDING AND ABETTING

67. Plaintiff realleges and incorporates by reference paragraphs 1-66 above.

68. Defendants Sampsell, Jaworski and Marchand were all managers and/or supervisors of the Plaintiff for the Company during all relevant times mentioned herein.

69. Defendants Sampsell, Jaworski and Marchand aided and abetted the Company in its Discriminatory, hostile and retaliatory conduct against the Plaintiff.

70. Defendants Sampsell, Jaworski and Marchand directly participated in and/or condoned the discriminatory, hostile and retaliatory conduct against the Plaintiff.

71. The acts and/or omissions of Defendants' Sampsell, Jaworski and Marchand were intentional, willful, reckless, and discriminatory in nature.

72. The acts and/or omissions of Defendants' Sampsell, Jaworski and Marchand were intentional, willful, reckless, and directly motivated by Plaintiff's race and/or in retaliation for Plaintiff's complaints of discrimination.

73. The above mentioned discriminatory acts and illegal conduct by the Company could not have been effectuated and/or carried out without the knowledge, aiding and/or abetting of Defendants' Sampsell, Jaworski and Marchand.

74. By virtue of Defendants' conduct as alleged herein, Plaintiff has been injured.

## COUNT V
## RETALIATION

75. Plaintiff realleges and incorporates by reference paragraphs 1-74 above.

76. Defendants' acts and/or omissions were intentional, willful, reckless, and discriminatory in nature and were directly motivated by Plaintiff's complaints of discrimination against the Defendants.

77. Defendants' acts and/or omissions were in direct retaliation for Plaintiff's complaints of discrimination against the Defendants.

78. 42 U.S.C. §1981, Title VII and NYHRL guarantee protection of the law against retaliation for complaints of discrimination on the basis of race in employment practices.

79. By virtue of Defendants' conduct as alleged herein, Plaintiff has been injured.

## COUNT VI
## HOSTILE WORK ENVIRONMENT

80. Plaintiff realleges and incorporates by reference paragraphs 1-79, above.

81. Defendants' acts and/or omissions were and continue to be intentional, willful, reckless, and discriminatory in nature and directly motivated by Plaintiff's race.

82. Defendants' acts and/or omissions were and continue to be pervasively hostile, intimidating and offensive to Plaintiff.

83. Defendants' acts and/or omissions would be perceived as hostile and offensive to a reasonable person similarly situated as the Plaintiff.

84. Defendants' acts and/or omissions were and continue to be sufficiently intimidating, severe, pervasive, insulting and discriminatory as to alter the conditions of Plaintiff's employment and to create a hostile and abusive working environment.

85. By virtue of Defendants' conduct as alleged herein, Plaintiff has been injured.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

86. Plaintiff realleges and incorporates by reference paragraphs 1-85 above.

87. Defendants' acts and/or omissions were intentional, willful, reckless, and discriminatory in nature and directly motivated by Plaintiff's race

88. Defendants' acts and/or omissions were intimidating, pervasive, extreme and outrageous and intended to cause severe emotional distress to the Plaintiff.

89. Defendants' acts and/or omissions were deliberately reprehensible and atrocious and in direct retaliation for Plaintiff's complaints of race based discrimination.

90. By virtue of the foregoing, Plaintiff has suffered severe emotional and physical distress.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

a. Awarding Plaintiff back wages for denial of overtime and failure to promote;

b. Awarding Plaintiff compensatory damages in the amount of $50,000,000.00;

c. Awarding Plaintiff punitive damages in the amount of $50,000,000.00;

d. Awarding attorneys fees and reimbursement of costs associated with this action to Plaintiff's Counsel;

e. Awarding Plaintiff such other and further legal and equitable relief as may be appropriate in the interest of justice.

DATED: December 6, 2006
Buffalo, New York

/s/ Judith A. Biltekoff
BROWN & KELLY, LLP.
Attorneys for the Plaintiff,
ELIJAH TURLEY
1500 Liberty Building
Buffalo, New York 14202
Phone: (716) 854-2620
jbiltekoff@brownkelly.com